# JACOB H. VAN DEUSEN *versus* JOHN FRINK Junior.

A second mortgagee of land took an assignment of the first mortgage and procured from the mortgager a release of the equity of redemption. Subsequently a creditor of the mortgager levied on the equity of redemption and purchased it at the sheriff's sale. Upon a bill in equity to redeem brought by the creditor against the second mortgagee, it was *held,* that it was competent for the creditor to prove that the second mortgage and the release were fraudulent and void as against himself, by evidence of fraud practised on the mortgager by the second mortgagee, although the mortgager himself had made no attempt to avoid them.

In the same case, the deposition of the wife of the mortgager was offered in evidence by the creditor. It appeared that after her deposition was taken, the mortgager had given his deposition, he having been released unconditionally by the creditor, and that such release was delivered to the wife for the mortgager before her deposition was given, but that the mortgager accepted it afterwards ; and that the wife had, by her separate deed, on the back of the mortgager's deed of release of the equity of redemption to the second mortgagee, but of a subsequent date, released her dower, and that she had also released her dower by her separate deed on the back of the deed of the officer conveying the equity of redemption to such creditor It was *held,* that the wife was not an incompetent witness, as being interested.

Oral or secondary evidence is not competent to prove that receipts for money have been given, or to prove the contents of a contract in writing, unless it be shown that such receipts or contract are not within tne control of the witness or the party by whom such evidence is produced.

In a contract, by which the owner of a right of running a line of stage-coaches, agreed to sell such right, it was stipulated, that if the vendee failed in any instance of running the stage-coach according to the contract, he should forfeit such right to the vendor, who was to resume the running of the stage-coach, and that if the vendor failed to perform his part of the contract, he should forfeit a mortgage given to him by the vendee and the promissory notes secured by such mortgage. It was *held,* that although the forfeiture on the part of the vendee would take effect immediately on a violation of the contract by him, while that on the part of the vendor, being a penalty subject to be reduced, upon principles of equity, to such sum in damages as the vendee should actually sustain by the vendor's failure to perform his contract, could take effect only through the means of a judicial process, yet, in legal contemplation, the forfeitures were to be considered as equal in effect between the parties.

Where a mortgager, by a deed of sale and quitclaim, for a valuable consideration expressed therein, conveyed the mortgaged land to the mortgagee, it was *held,* that there being no evidence that this was intended as a payment of the notes secured by the mortgage, such notes, if outstanding, might be collected or negotiated by the mortgagee, as available notes.

BILL in equity to redeem. The plaintiff was a creditor of Elizur N. Deming, the mortgager, and had levied his execution on the equity of redemption, and became the purchaser at the sale by the officer. The defendant, in his answer, set forth a mortgage of the land in question by Deming to Fabius Beckwith, dated March 31, 1827, of which the defendant

38 *

claimed to be the assignee ; also, a subsequent mortgage from Deming to the defendant, dated July 15, 1827, made to secure the payment of the sum of $800, and a deed of sale, release and quitclaim of the same land from Deming to the defendant, dated July 21, 1827, which was prior to the levy of the execution of the plaintiff.

It appeared, that previously to these conveyances, Deming had mortgaged the land to the Massachusetts Hospital Life Insurance Company, which mortgage was still outstanding ; and that he had leased the estate to one Wendover for five years and had received the rent in advance, and that the lease was outstanding at the time of his conveyances to the defendant.

The deeds from Deming to the defendant were charged by the plaintiff to be fraudulent ; and by the direction of the Court issues were framed for the trial of the validity of the deeds by a jury.

Upon the trial of the issues, before *Shaw* C. J., the jury were instructed, that to maintain the issues on the part of the plaintiff, that the deeds in question were fraudulent and void, it was competent for him to show in evidence any fraudulent or deceitful practice as against Deming, and if any such fraud or deceit were satisfactorily proved, the deeds were fraudulent and void, and might be so shown by the present plaintiff, a creditor and purchaser of the equity of redemption, although Deming had done no act and made no attempt to avoid them.

The plaintiff offered in evidence the deposition of Electa Deming, the wife of E. N. Deming. This evidence was objected to on the ground, that she was interested to defeat her husband's mortgage, and thus to let in her own right of dower. The objection of interest was placed on two grounds :

1. The interest of her husband to defeat the deeds ; in which case, his debt to the plaintiff would remain satisfied and discharged, by the sale of the equity of redemption, under which the plaintiff claimed ; otherwise, the husband would be chargeable with the payment of it.

It appeared that a similar objection had been taken to the competency of the husband as a witness, and that it was removed by a release from the plaintiff previously to his giving

his deposition ; but that the husband's deposition was given after that of the wife. It was then shown that the release was given in duplicate ; that immediately before the wife gave her deposition, one of these releases was delivered to her, for her husband ; and that he afterwards accepted it.

It was thereupon ruled, that as the release was unconditional and solely for the benefit of the releasee, his acceptance might be presumed, or that his subsequent assent related back to the delivery of the release to her for his use, and gave the release effect from that time ; and that upon one or the other of these grounds his interest, and consequently hers, might be considered as discharged at the time when she deposed.

2. Upon the other ground, it appeared that the wife had, by a separate deed on the back of her husband's deed to the respondent, but of a subsequent date and after that deed had been recorded, released her dower. It was thereupon contended, that she had an interest to avoid the deed and thus to annul her release of dower. But it was proved, that she had also released her dower on the back of the deed of the officer to the plaintiff, by which the equity of redemption was conveyed to him. In neither of these releases did her husband join.

It was contended, that the release on her husband's deed might be presumed to have been made with his assent, and so was valid ; but that the release on the officer's deed could not be so presumed, and was therefore void. It was ruled, that either both were valid, or both void, and so, that she had no interest arising out of her right of dower.

The deposition of Electa Deming was accordingly admitted.

In the course of the trial a deposition of Thaddeus Reed was read by the defendant, and certain objections were taken to parts of it, which were sustained.

In regard to this it appeared that, by a contract in writing, dated July 15, 1827, and of even date with the mortgage by Deming to the defendant, the defendant had transferred to Deming one third part of the right of running a line of stagecoaches from Hudson to Pittsfield, and of receiving one third of the compensation taken for carrying the mail and passengers. There was a stipulation in the contract, that if Deming

failed in any instance, of running his stage-coach, according to the contract, he should forfeit the right and Frink should resume the running of the coach and carrying the mail, he being under obligation to the mail contractor to have the mail regularly carried, and to the other proprietors of the line to see that a coach was regularly run on his part of the line.

There was also a stipulation on the part of the defendant, that if he failed to perform any part of his contract, the mortgage given by Deming to him, and the promissory notes secured by the mortgage, should be forfeited. It also appeared, that after the execution of the contract, Deming ran the stage-coach three or four weeks, and then failed, and that the defendant resumed the running of the coach.

The deposition of Reed, who was one of the co-proprietors of the line, stated, that upon a settlement made among the proprietors, the defendant paid over for Deming, for moneys *receipted for* by Deming and his agents, the sum of $200 or upwards, while he ran the stage-coach. But on objection being made, it was ruled, that this was not proper evidence to show that receipts for money had been given by Deming and his agents, without producing such receipts, or showing that they were lost, or were not within the power of the party or witness. To this ruling the defendant excepted.

The same witness testified, that he had purchased one sixth part of the right of running a stage-coach on the same route, and was proceeding to state what privileges he obtained, and what obligations he assumed under the contract, when it appearing that it was a contract in writing, it was ruled, that it was not competent to give parol evidence of the contents of an instrument in writing, without showing that it was lost, or not in the power of the party, and without asking the witness to produce it or a copy of it. To this ruling, also, the defendant excepted.

In relation to the stipulations in the contract, between Deming and the defendant, the jury were instructed, that the forfeiture on the part of Deming, in case of failure to fulfil the terms of the contract, was from the nature of the subject, immediate and certain, and the defendant would be immediately thereupon reinstated in all the rights which he had transferred to

Deming ; but that the clause relating to the forfeiture on the
part of the defendant, if he should fail in the performance of the contract, would not operate to defeat the mortgage, or release the notes *de facto*, but would only operate as a penalty, subject to be reduced upon principles of equity, to such sum in damages, as the other party had actually sustained by such failure ; so that, although these stipulations of forfeiture were mutual and equal in point of form, they were not so in legal effect and operation.   This was alluded to as a circumstance to be weighed by the jury, in estimating the character of the transaction.

The jury were also instructed, that the deed of release from Deming to the defendant, being a deed of bargain, sale and quitclaim, for a valuable consideration expressed therein, and there being no evidence to show, that it was intended as a payment of the notes secured by the mortgage, it did not in point of law operate as payment, and the notes being still outstanding, they might be collected or negotiated by the defendant as available notes.

The jury returned a verdict for the plaintiff.

The several questions arising from these decisions and ex ceptions were reserved for the consideration of the Court, upon the motion of the defendant for a new trial.

The cause was argued at the bar, at September term 1833, and afterwards in writing.

*Porter* and *Byington*, for the defendant. It is not competent for the plaintiff to prove that the deeds in question were obtained by fraud practised on Deming by the defendant.

Deeds procured by fraudulent and deceitful practices are voidable and not void ; and consequently the deed from Deming to the defendant was only voidable.   It gave a seisin to the defendant.   The estate thus conveyed could be avoided only by Deming or his heirs, by an entry on the defendant or his heirs within twenty years ; and until avoided by Deming no subsequent conveyance by him could take effect.   *Somes* v. *Brewer*, 2 Pick. 184 ; 2 Bl. Comm. 292 ; Com. Dig. *Idiot*, *D*, 4, 5 ; *Worcester* v. *Eaton*, 11 Mass. R. 375, and 13 Mass. R. 371 ; *Wait* v. *Maxwell*, 5 Pick. 220 ; *Green* v

Van Deusen
*v.*
Frink.

*Kemp*, 13 Mass. R. 515 ; *Knights* v. *Putnam*, 3 Pick. 184 ; *Fletcher* v. *Stone*, 3 Pick. 251 ; 1 Evans's Pothier, 17.

No person, at law or in equity, can avoid a deed on the ground that it was obtained by fraud practised upon the grantor, except the grantor or his heirs. *Bates* v. *Graves,* 2 Ves. jun. 292. The distinction in the cases is, that a deed made to defraud creditors is void *ab initio* as against creditors, but good as between the grantor and grantee and persons claiming under them ; but a deed procured by fraudulent practices and imposition on the grantor, is not void, but voidable by the grantor or his heirs, and until so avoided, is good against all other persons. *Sands* v. *Codwise*, 4 Johns. R. 598 ; Bac. Abr. *Void &c.*, *F.* Here there was no intent on the part of the defendant or of Deming, to defraud the creditors of Deming. To bring the case within the statutes of 13 *Eliz. c.* 5, and 27 *Eliz. c.* 4, there must be collusion between the grantor and grantee.

The proceedings on the plaintiff's execution, the attachment, the sale and the deed of the officer, are void acts ; because Deming, after his conveyance to the defendant, which was only voidable and not void, was no longer seised of the land. Until Deming should have entered and regained a seisin, he could make no valid conveyance, and the plaintiff's levy could have no greater effect than a deed from Deming. The plaintiff therefore is a stranger to the subject matter of this controversy. *Bartlett* v. *Harlow*, 12 Mass. R. 350 ; *Harrington* v. *Brown*, 5 Pick. 519 ; *Oliver* v. *Houdlet*, 13 Mass. R. 239 ; *Fletcher* v. *Stone*, 3 Pick. 251.

But supposing that a deed of Deming before an entry upon the defendant, would have avoided his deed to the defendant, yet the plaintiff's levy could not have that effect. The St 1798, *c.* 77, § 5, which provides that the officer's deed shall be as effectual to all intents and purposes, to convey the debtor's right in equity to the purchaser, as if the same had been made and executed by such debtor, did not mean to give to an officer power to avoid a deed, with which the party himself who made it, was satisfied, and which was not void as to creditors. If it does give this power, it gives to a creditor or an officer the power of avoiding all voidable estates, and

Van Deusen
*v.*
Frink.

the distinction in regard to the rights of a stranger and of a party, to avoid conveyances, so well settled in the law, is swept away. If this effect is to be given to an officer's deed, he may set aside conveyances voidable on account of infancy, usury or any other cause, though made honestly and upon good consideration.

The defendant having received a release of the equity, this operated as a foreclosure of the mortgage to him, and as a payment of the notes secured by it, *pro tanto*, so far as the value of the land would go. *Amory* v. *Fairbanks*, 3 Mass. R. 562 ; *West* v. *Chamberlin*, 8 Pick. 336 ; *Hedge* v. *Holmes*, 10 Pick. 381.

As to the admissibility of the deposition of Electa Deming, we contend that a delivery of the release to Deming himself was necessary to relieve the mind of the witness from bias. The fiction of its relating back to the time of its execution could not affect the mind of the witness in the act of giving testimony. Besides, the husband's assent to the release was not to be presumed. *Russell* v. *Woodward*, 10 Pick. 408.

Parol evidence was admissible to show, that Deming *had given receipts*, without producing them. We did not offer evidence of their contents. *Eagle Bank* v. *Chapin*, 3 Pick. 180.

*Dwight* and *Jones*, for the plaintiff. The statutes under which the plaintiff derives his title put him in the place of Deming, and give him the same right to set aside the mortgage, for the fraud found by the jury, as Deming himself had ; and it is admitted that Deming had a right to set it aside for that fraud. *St.* 1783, *c.* 57, § 4 ; 1798, *c.* 77, § 4, 5.

According to adjudged cases, and on the principles of the common law, the plaintiff stands precisely in the place of Deming, the execution debtor, and represents him. *Buffington* v. *Gerrish*, 15 Mass. R. 156 ; *Hussey* v. *Thornton*, 4 Mass. R. 407 ; *Jackson* v. *Hayner*, 12 Johns. R. 469 ; *Smithwick* v. *Jordan*, 15 Mass. R. 113 ; *Worcester* v. *Eaton*, 13 Mass. R. 374 ; *Wadsworth* v. *Havens*, 3 Wendell, 411 ; *Reigal* v. *Wood*, 1 Johns. Ch. R. 402 : *Troup* v. *Wood*, 4 Johns. Ch. R. 228 ; *Bates* v. *Graves*, 2 Ves. jun. 286 ; *Graff* v. *Jones*, 6 Wendell, 522 ; *Howell* v. *Baker*, 4 Johns. Ch. R. 118.

A contract or deed procured by fraud, practised by one party on the other, is void by the common law. *Livingston* v. *Hubbs*, 2 Johns. Ch. R. 512 ; *Hildreth* v. *Sands*, 2 Johns. Ch. R. 42 ; *Bates* v. *Graves*, 2 Ves. jun. 286 ; *Boyd* v. *Dunlap*, 1 Johns. Ch. R. 482 ; *Jackson* v. *Timmerman*, 7 Wendell, 438.

It is not necessary for the plaintiff to show that Deming's mortgage to the defendant is void as to all persons, or as to all purposes. It is sufficient that it is void as to the defendant, the fraudulent party. *Bliss* v. *Thompson*, 4 Mass. R. 492 ; *Somes* v. *Brewer*, 2 Pick. 197, 198, 200 ; 1 Stark. Ev. 242, note 1 ; Lofft's Rep. 427 ; *Wheeler* v. *Wheeler*, 3 Cowen, 577 ; Shep. Touch. 53 ; Roberts on Fr. Conv. 495 ; *Bridge* v. *Eggleston*, 14 Mass. R. 245; *Hildreth* v. *Sands*, 14 Johns. R. 498.

The mortgage from Deming to the defendant is within the purview of *St.* 13 *Eliz. c.* 5, and void by force of this statute as to creditors of Deming. *Cadogan* v. *Kennett*, Cowp. 434.

The remarks on the part of the defendant, in regard to seisin and entry, are inapplicable to the case, for the subject matter of controversy is a mere right to redeem mortgaged property, and there is no such thing as a *seisin* of such a right. The legal estate and the legal seisin of the property were in the Massachusetts Hospital Life Insurance Company. Powell on Mortg. 206, 209, 339 ; *Ellis* v. *Paige*, 1 Pick. 48 ; Metcalf's Dig. 235, note.

In regard to the admissibility of Electa Deming's deposition, they cited 2 Stark. Ev. (Metcalf's edit.) 744, 758, note 1 ; Co. Lit. 337 *b*, note 1 ; *Hatch* v. *Hatch*, 9 Mass. R. 310 ; *Maynard* v. *Maynard*, 10 Mass. R. 458 ; *Harrison* v. *Phillips Academy*, 12 Mass. R. 461 ; *Fowler* v. *Shearer*, 7 Mass. R. 20 ; *Stearns* v. *Swift*, 8 Pick. 532 ; and as to the inadmissibility of parol evidence to prove the contents of the contract and that receipts had been given, 1 Stark. Evid. 394 ; 3 Stark. Evid. 999.

The opinion of the Court was drawn up by

SHAW C. J. The main question requiring the consideration of the Court in the present case, and which has been elaborately and very ably argued, arises from the instructior given by the court to the jury upon the trial of the issues,

and which is thus stated ; "that to maintain the issue on the part of the plaintiff, that the deeds in question were fraudulent and void, it was competent for him to show in evidence any fraudulent or deceitful practice as against Deming, and if any such fraud or deceit were satisfactorily proved, the deeds were fraudulent and void, and might be so shown by the present plaintiff, a creditor and purchaser of the equity of redemption, although Deming had done no act and made no attempt to avoid them."

The Court are all of opinion, that, under the circumstances of the case, this direction was right. These circumstances were, that prior to any of the conveyances, which are the subject of consideration in this action, the premises had been mortgaged to the Massachusetts Hospital Life Insurance Company, which mortgage has remained outstanding to the present time. The only right of Deming was that of a mortgager, that is, one who, as against the mortgagee, has a right of redemption only, and stands as tenant at will, but as against others, has an estate which he can further mortgage or convey, and which may be attached and sold in the manner directed by statute. It also appears, that Deming had leased the estate to Wendover for five years, and received the rent in advance, which lease was outstanding at the time of the conveyances in question, so that Deming had not the actual possession or right of possession, and could not confer such right on any other person by his conveyance ; he had only such constructive possession as a landlord can have by the possession of his tenant, that is, a possession not adverse, not amounting to, or capable of being deemed to be an ouster or disseisin, or preventing the owner, by any rule of law, from conveying.

It also appears, that prior to either of the conveyances to Frink, Deming had made a mortgage in good faith, to one Fabius Beckwith, which has never been contested by any of the parties. Prior to the sheriff's sale, under which the plaintiff purchased, Frink had taken an assignment of this last mentioned mortgage, which he held when the bill was brought.

Under these circumstances the rights of all these parties

being purely equitable, all arguments arising from the supposed disseisin of Deming, and the necessity of an entry by him, to avoid the deed to Frink, are wholly without foundation, and if Deming could regain his estate only by such entry, he could not regain it at all. Without referring to the mortgage to the Massachusetts Hospital Life Insurance Company, and the legal estate thereby vested in them, the fact that Deming had made a valid mortgage to Beckwith, and that Frink had become the assignee of that mortgage, gave him a complete right of possession as against Deming, which he could not defeat or affect by his entry. Supposing then the mortgage and the release made by Deming to Frink subsequently, were, for any cause, void as against Deming, the sole remedy of the latter would be, to tender the amount, which he admitted to be good, and in case the mortgagee should refuse to accept such tender and release the estate, his only remaining remedy must be to bring his bill to redeem, and if the fraudulent release should be set up to bar him of his bill to redeem, or the fraudulent mortgage to enhance the amount to be paid upon such redemption, he could avoid them by proper averments and proof of such fraud. The argument therefore drawn from the technical rule of disseisin, and the necessity of an entry on the part of Deming, cannot be sustained. Upon a general review of the argument, the Court are of opinion, that it is not necessary to decide several of the questions which have been discussed, but that this cause must be decided upon its peculiar circumstances, upon the construction of our own statutes, and upon the just application of the provisions of these statutes to those circumstances.

The plaintiff combined in himself both characters, that of a creditor of Deming and that of a purchaser of the equity of redemption. In the former, it seems not to be seriously questioned that he had full power to set aside and avoid all mortgages, conveyances, and incumbrances of every description, made by Deming, through fraud and covin, to delay and defraud the creditors of Deming. In the latter character, as purchaser, he had by force of the statutes, all the power and authority to redeem which Deming himself had before the sale.

The *St.* 1783, *c.* 57, § 4, provides, that equities of redeeming lands mortgaged &c. may be taken by attachment and set off on execution, and further provides, that any person at whose suit such right in equity of redeeming such mortgaged lands is taken in execution, shall have the same and as full and ample right and power of redeeming such lands as the mortgager had, or ought to have, and may procure and receive a discharge of mortgages, in the same manner as the mortgager might have done.

By the *St.* 1798, *c.* 77, the former act is not repealed in terms ; whether it is so in effect, so far as it provides a different mode of disposing of the interest attached or taken on execution, is immaterial. This statute, instead of directing that an equity of redemption shall be appraised and set off on execution like other real estate, provides, that the equity of redemption may be sold by the sheriff, and his deed shall convey a good right to redeem, to the purchaser.

Taking this statute in connexion with the former, and construing its various provisions according to the apparent intent of the legislature, we think it very clear that the full and entire right to redeem which the debtor had before the sale, is effectually transferred by force of the statute, and vested by the sheriff's deed in the purchaser.

The third section of the statute provides, that all rights in equity of redeeming real estate mortgaged, shall be liable to be attached on mesne process and taken in execution for the payment of the just debts of the mortgager or owner. The officer is to make sale of *the same*, that is, of all the right, and make good and sufficient deed or deeds of any estate so sold. The terms "good and sufficient" mean, good and sufficient in law to pass and transfer the estate so sold, to wit, all the debtor's right.

The fifth section provides, that all deeds made and executed as aforesaid shall be as effectual, to all intents, to convey the debtor's right in equity aforesaid to the purchaser, his heirs and assigns, as if the same had been made by such debtor. This, construed according to the principle of liberality which prevails in the construction of all remedial statutes, necessarily imports a transfer of all the debtor's right to

Van Deusen *v.* Frink.

redeem. We think also, that the first section in the same statute leads to the same conclusion. It is the section which gives a remedy by bill in equity. It provides, that where the mortgagee has entered for condition broken (the remedy by bill in equity is afterwards extended to cases where the mortgagee has not entered for condition broken, by *St.* 1821, *c.* 85, § 2) the mortgager or other person lawfully claiming under him, shall have right to redeem. The purchaser of the equity is by the statute placed in the condition of one claiming lawfully under tne mortgager. It tnen goes on to provide that, upon payment or tendering, &c., the mortgagee shall be obliged to accept performance and release to the person tendering, *having lawful right to redeem the same,* and upon refusing, such mortgager, or *other person lawfully claiming* as aforesaid, may have his bill to redeem. Jurisdiction is conferred on the courts to hear and determine the cause, and to enter up judgment agreeably to equity and good conscience.

The person having a lawful right to redeem, which description clearly includes the purchaser at a sheriff's sale, is put upon the same footing, in all respects, both as to rights and remedies, with the mortgager.

Considering the general policy of the law, to give a liberal construction to all provisions designed to give a remedy to creditors, to obtain satisfaction of their just debts from the real estate of their debtors, that this has been extended from legal estates to equitable interests, that these statutes, in express terms or by necessary implication, do give to purchasers of equitable estates in mortgage, the same rights and remedies that the mortgagers themselves had, that such rights are to be enforced, not by entries applicable only to legal estates, but by a judicial proceeding in a court of equity, that by established principles of law, Deming would have a right upoɪ a bill to redeem, to repel and avoid the release, and the second mortgage, if set up against him, upon the ground that they were obtained from him by deceit and fraudulent practice, the Court are of opinion, that the present plaintiff, being the creditor of Deming, and the purchaser of the equity of reɑemption, at a sale on execution regularly held by the officer, has the same right to avoid those instruments by proof of

the same species of fraud, and that the direction in this respect was right.

Several exceptions were taken to the decision of the judge upon the admission and rejection of evidence, upon consideration of which the Court are of opinion, that (except one hereafter stated) the exceptions are not well founded and cannot be sustained.

The exception alluded to was taken to the decision of the Court in point of law, giving a construction to the provisions of the written contract between Frink and Deming, containing mutual clauses of forfeiture in case of failure of performance. The decision was, that these, although mutual and equal in terms, are not so in legal effect. The Court are of opinion, that without further limitation or qualification, this decision was incorrect, and calculated to mislead the jury, and that although in practice these forfeitures would operate differently, one being to take effect immediately, and the other through the means of a suit or judicial process, yet that in legal contemplation these are to be considered as equal between the parties. For this cause the verdict must be set aside, and a new trial granted.